Well, good morning, Your Honors. If it pleases the Court, James Dawson on behalf of the appellant. And I hope my brief is correct. It looks like it may be 12-point type, but to that extent, I apologize. I'm going to try to keep this as 14 is better for me, too. Yes, sir. It's recalling please. It's also, if you sort of want to look at it, it sounds to me it's type. Yes. Yes. Thank you, Your Honor. Jessica says she's worried about publication. I see. Oh, no, I'm worried about the story. Thank you. Thank you. I might even put it in the bank here. I appreciate that. How does the same panel know all of that? I'll follow you to the end of the earth if I can do that. Thank you. This case, as the Court knows, has been thoroughly and certainly well-briefed by counsel. You've had your share of ups and downs in this case. Well, we have, indeed. It's been something of a roller coaster. One, and then the Supreme Court comes out with Hamid. Hamid, that is correct. And then the Supreme Court changed his mind. And here we are. You know, the main question we have is how did they pass Hamid? I'm going to do my level best at this point to articulate how we do that. And in reading Hamid, it gives a number of examples as to what is not advertising because, as the Court knows, Hamid said, well, advertising in California for purposes of construing an advertising injury claim is what advertising means in general, which is widespread dissemination to the public. It doesn't mean one-on-one conversations. It doesn't mean taking information from customer lists. There's a whole series of things it doesn't mean. But the Court in Hamid also gave some examples as to what advertising could be. And that's why I'd like to start my discussion today because we know what it isn't. But the question is what is advertising in the context of a, I'm going to call it a small business, but not General Motors, not Intel, a smaller entity. And Hamid gave some examples. It has to be in the context of how the policy was written. That is correct. And the Court in Hamid is very, very clear that the definition of advertising is unrelated to the nature of the business, big, small. It doesn't make any difference. There's uniformity. That's necessary. Everybody will know what is covered, what is not. That is correct. That's right. And in Hamid, the Court did give an example of what advertising can be, and I'm going to try to make a point here, consistent with Judge Presency's question to me a moment ago, and that is what is advertising in our case? And I won't say small business, big business. What is advertising? And that is it could be spots on the radio or television. It could be the company buying space on billboards or bus benches, taking out advertisements in newspapers. Fairly makes sense. Makes sense to me. That makes perfect sense in the end. Let me see if I can get. Yes. Yes. We look at the complaint. We do. In the underlying case, right? Yes. And the complaint in the underlying case never uses the word advertisements. That is correct. Or widespread promotional activities. It doesn't use that word. We are agreed on that. Yes. So what we need to do in order for you to win, or what you need to persuade us in the case, is there's something in the conduct alleged in the underlying suit, even if it's only a little bit, even if it's only a small part of what's alleged, that fairly falls within the definition of advertising,  That is correct. Okay. So it would help me a lot if you could just focus in on which part of the complaint and which of the allegations in that complaint we're talking about. Yes. And then try to map it on to the concept of advertising ads. If you could do that, it would be good. Yes. Let me do that. The complaint is in the excerpts of the record 42 through. It's a long complaint. I'm sorry. I'd say it starts at page 42 in the appellant's excerpt of the records and goes through. I have it. All right. And. If you could just tell me which language. Will do. Which concept. And I realize complaints are sometimes prolegs. So you're not limited to one thing. And let me. Just tell me why it is in the. I will. And let me say that the first four causes of action have the same language in them, even though they're cast as breach of contract. It doesn't matter. Right. If you can find one thing, it's enough, right? Here we go. All you have to find is one thing. Right. Go to if the court would to this paragraph 13, which commences on. Page six. But it go go. If the court would to page the next page, which is the excerpt of the record 48. Page seven of the of the complaint commencing at. It's page seven of the complaint. Forty eight in the excerpt. The record paragraph 13. We're still in paragraph 13 a. And the complaint alleges that Mr. Hayward in while he was still working at the other company at NSYNC made an agreement with the new company, the Andreessen people, that he would bring confidential information belonging to NSYNC to the defendants, meaning Andreessen and Hayward, presumably, including. And then it goes on to a number of things he's alleged to have done. Let me say parenthetically he didn't do any of this, any of it, ever. But he's alleged to have done it, and I think that's where our analysis. I, I, I. Good. That's that's what I'd hope you say. Thank you. I don't have to argue. All right. He doesn't have to prove that. Okay. Now, he was he is alleged to have taken with him marketing plans, business plans and strategies. Okay. This is page 7, ER 48, lines 5 through 10. Okay. All right. Now. And he and Hayward would bring over confidential information. That includes marketing plans, business plans and strategies. Then we go to the next page. Page 49? Right. Okay. And this is subsection D, commencing at line 11 and ending at line 16. And Hayward is accused of soliciting customers, presumably existing customers, of NSYNC. And we know that that's not advertising. We know it's not. Or potential customers of NSYNC. He's accused of soliciting potential customers. After having brought marketing plans, business plans and strategies, then he solicits potential customers. And that is, in our view, broad enough to assert a claim for advertising. And the reason that we're not talking about customer lists, we're not talking about a group of people in the trade, we're talking about soliciting potential customers based upon marketing plans, strategic plans, what was strategies and business plans. Now, it doesn't say he advertised. It doesn't say that he took whatever the information was in the advertising offense, the misappropriation of ideas, whatever he was supposed to have taken, and put it in on the billboards. It doesn't say that. But we believe that a fair reading is he's accused of taking marketing plans and he solicits potential customers. The word that we base our appeal on is the word potential. Because I submit to you that anyone in the public could be a potential customer. Could be. Now, in the context of this case, as the Court knows, after reading the text that we've just gone through, and it goes to you. Advertising, as explicated by the Supreme Court of California, is to a broad explication, so to speak. Yes. So that it is not so much who is directed at it. I mean, presumably you could advertise to a single person. Sure. Let me just give you an example. Let's say you buy a billboard on the sweetheart's way to work saying Ted loves Mary or something like that. Well, you know, it's a billboard. Yes. It's seen by everybody. But it's, you know, we've all seen it. You know, somebody buttons against Skywriter to say Bill loves Mary or something like that. I mean, that's directed at one person, and I would say that's advertising. So it's not the question of who the target is so much as the method, I thought, of what the distinction drawn by Hameed. I think it's actually both. But I think that the beginning of the analysis in Hameed is you can't advertise to three or four people based upon taking their customer list or something like that. But you might. Well, you might, but not for purposes of advertising. You might. I mean, let's say those three people, let's say those three really big customers are very important to you, you might very well sort of figure out, well, see the billboards, or perhaps figure out, oh, you know, this one is a big football player, a football watcher, so I'll buy an ad on the football game directed at this one person, you know, seen by a million other people. But I don't really care about the million others, but it's going to be directed at this one person. But the method is advertising, which is different from solicitation, which is buttonholing or calling on the telephone or sending an individually addressed letter or a fax or something that is a one-on-one type communique. I thought that's the distinction that was drawn. Well, I believe that in Hamid there is a discussion by the California Supreme Court of one or two cases as an illustration of what advertising is not that is fairly close to what you just suggested, a very small target audience, simply because the nature of the business is such that their services will be restricted to that small target audience. And my reading of Hamid is that's not good enough for purposes of the definition of advertising and an advertising injury insurance claim. Let me say this. Is there anything in the complaint that requires communication by the employee that is selected? That requires communication? That requires communication. No. There is an allegation in the complaint that said the employee took the marketing plans and whatnot and then solicited. No. No. It says, with all due respect, Judge, if you go back to the text, and, again, it's always difficult to parse the text of a complaint that you disagree with, but it says that he, Mr. Hayward, solicited potential customers. That's what it says. And going back to Judge Kaczynski's point of a moment ago, he used the S word, solicitation. And if you read Hamid carefully, and there's a case after Hamid that says that the California Supreme Court distinguished advertising on the one hand from solicitation on the other hand, we disagree that that's what the California Supreme Court is doing. And if you read Hamid, all of the examples of the type of activity that is not covered under an advertising injury claim is one-to-one communication, small group communication, things like that. We believe that the word solicitation, if you go to Webster's and just look it up, 1996 Miriam Webster's, to attempt to persuade a person to purchase something, it doesn't limit it to one-to-one or anything else. And what we're suggesting here is that the word solicitation of potential customers, in the context of what Mr. Hayward was supposed to have done, would reasonably lead an insurer to say, well, there is a potential for liability under the advertising injury clause of the policy. Let me suggest another way to look at it, if I may. And that is, if this sequence of events hadn't occurred, in this case, gone to trial, would the pleadings framed the way they are? We believe that the plaintiff in the underlying case, in sync, could have brought in witnesses to state that Mr. Hayward had gone out, taken information from the marketing plans and whatnot, and used that to develop, to solicit potential customers to fashion an advertising program. And we believe that that evidence would have been admissible under the pleadings as they are, and he could have been liable for it. That's the standard that we're talking about. Are you basically saying that the underlying complaint is ambiguous? You don't know whether it's group solicitation or one-on-one solicitation? Is that your position? Well, yeah, I don't think that it's a model of clarity. What I am saying is that I'm not here to critique that. What I'm here to say is a way of looking at the test in California, which is an insurer owes a duty of defense if the underlying complaint, without any investigation, which is what we have here, discloses a potential for coverage. And what I'm suggesting here is one way to look at that is, would evidence of advertising as defined by Hamid, would that have been admissible in this proceeding with the allegations as they're framed? And we suggest that it would have been. The word solicitation is broader, we believe, than the word advertising. We believe that advertising is a type of solicitation. We believe that one-on-one solicitation is, you know, it's qualified all of the language in the cases that we found that say solicitation is not covered, qualifies that and puts it into a certain one-on-one or limited context. And the teaching of Hamid, we believe, is that advertising, in order to be covered, in order to meet the first step, you have to show that advertising is for widespread promotional activities directed to the public at large. Without that, you don't state a claim. We believe that a fair reading of the complaint states that claim. And I'll reserve the rest of my time, if I may. So if it had just said solicitation customers, that would have been too narrow because there wasn't a public authority? We would be here. Thank you. Thank you. Good morning. May it please the Court. I'm Gary Sullivan. I represent Centennial. I think the last point is perhaps the most significant. Counsel has conceded if you have solicitation of actual customers, that it is insufficient to trigger a duty to defend because you have no potential for coverage. I think that is indistinguishable from the solicitation, using the word that is in the complaint, of potential customers. It denotes the same conduct which under Hamid and Romby does not trigger a duty to defend. The mere fact that it is a different, equal class of individuals, that is, one-on-one solicitations of people from whom you hope to get business as opposed to those from whom you already have business, simply does not get them close to the hurdle of the definition. But the point they make is that when you're targeting existing customers, you're not targeting the public at large. It is a specific group that is identified, whereas the world of potential customers is quite large and these individuals are not identified. At least one way to try to figure out who they are and get them to bring their business is to advertise. One way to solicit their business is to advertise for a much larger group and then have them identify themselves by responding to the advertising or the solicitation, self-identifying by doing what customers do when they respond positively to advertising. You can go buy the product or call the 800 number or go to the website or call the representative or whatever. And that has some force. And the infirmity in that position is simply starting with the California Supreme Court's definition of advertising. And what you've done is you've given two different illustrations. One is, how do I entice potential customers? I can do it by soliciting them. I can do it by putting a widespread advertising promotional campaign together, appealing to the public at large, with a notation at the bottom, please see my website at selvinraith.com. Those are two distinctly different activities. Hamid says, in fact, that advertising and solicitation are mutually exclusive terms. I, in fact, may want to represent insurance companies other than Centennial and may want to embark on a campaign to solicit their business. If I embark on that campaign of soliciting their business in the same manner as I would solicit my own customers, I would call on them, I would show up on their doorstep and hand them cards, I would take them to breakfast, I would do things that are under the reading of Hamid. Where in Hamid do you see that the California Supreme Court says these are mutually exclusive terms? Well, it's in Rambi, quoting Hamid. Well, okay, but it's not in Hamid, right? Well, let's defer to Rambi.  Well, I'll take the point side of page 24 from the Rambi decision. I have pages in the 700s. You've got a Pacific Third site as opposed to the California Supreme Court reporter. And let me, I will make, yes, I will make the nexus for you because it's in the official reporter. It's got the P second page. I don't think I have stock pages. We have it in the excerpts of record. Page 337 would be the page on which you would find your P third site, which would be about 765, if I'm estimating right. But again, the California appellate court following Hamid has made that proclamation, that advertising and solicitation. Members of the House, I would like to know where in Hamid this is. I am looking at page 765. Let's see, page 766 would equate to page 24 of the Cal Fourth citation. If you'd give me a moment, let me see if I can point you to the particular point on the P third site. This is a day for practice points. One thing to remember is to always have, when things are reported in different reporters, and you're going to be questioned about cases, to always have versions of all these ready with pages marked. That's what you have associates for. Actually, and I anticipated the court would use the Cal Third site. My apologies, I didn't realize that you were not in California Third. I believe one particular form is wrong. I wrote six of them now. That's a mistake. That's why you're ticking away your clock. I'm trying to find where. But I really am interested exactly where in Hamid you are talking to, so you're going to have to take the time to tell me. Let me put you to... Do you have like a paragraph that starts with certain words? I'm going to direct the court, and I'm going to do it in a roundabout way because my clock is... Is there a footnote? If you look... Is there a footnote or something that's attached to the text? If you look at the paragraph that starts in select design... Yeah, I have it here. In select design super, 165... Correct. 169. All right. I've got it. Following that case, the court says, thus the court held, the solicitation of the customers, the competitor's customers, did not constitute advertising. And the reason I bring that up, I can't point the court... I don't see where it says that. Last line of that paragraph. Oh, so it's quite a bit after the quote. It's quite a bit after the select design site. It's at the bottom of that paragraph. Thus the court held, the solicitation of the competitor's customers did not constitute advertising under the CGL insurance policy. And the reason I point to that is that's precisely what is alleged here by NSYNC. Well, but what the court is doing there is describing what the Moscow Court did in the select design. True, and following it. The significance of that is, Judge Kuczynski, you asked if it is the solicitation of non-customers. Can't that place it within the scope of advertising injury? The answer from the Hamid case is obviously no. They're following the exact same analysis and applying it. The mere fact that you're soliciting your competitor's customers, which is what was occurring here, is still solicitation rather than advertising. Well, what it says here is the Vermont Supreme Court states that a majority of you defined advertising as widespread distribution of promotional materials to include the public at large, particularly because a majority have read the policy provisions according to their plain, ordinary meaning. The court reasoned that defining advertising to include customer solicitations was stretched too far. Right. Now going to page 7. Now, that customer solicitations sounds to me like it's there being used as if you are actually calling on particular customers. You are soliciting business as opposed to doing what Hamid and Random House Webster's dictionary cited at footnote 7 says, which is it is widespread promotional activity directed to the public at large. It is the act or practice of calling to public attention one's product, service, need, et cetera, especially by paid announcements in newspapers and magazines, over radio or television, on billboards, et cetera. And if you look at, I've got your Pacific Third site, page 768 at the top of the page, recent decisions interpreting California law also apply the majority definition of advertising, noting that individual solicitations are not advertising. Well, no, it says individual solicitations are not advertising. But saying that there are individual solicitations allows for the possibility of making solicitations that are not individual. And where that would violate California law is that you're not allowed to speculate about what could have happened or might have happened outside of the four corners of the complaint and that you can certainly use extrinsic evidence if there were. I certainly wouldn't want to violate California law, but what I'm doing here is reading a Supreme Court opinion and I am interpreting what it says, and what I see it does is it uses the word individual to modify solicitations, which to me means that the court believes that the two words are not redundant, that you could have individual solicitations and yet you could have solicitations that are not individual. But the Hmead decision also says that soliciting to small groups of people doesn't qualify because it does not meet the definition of advertising that they and, indeed, the majority. Well, certainly that's possible. So if you solicit to a small group of people, maybe that's not advertising. But if you solicit a large group, it may be perfectly fine. It's not the size of the group, as you commented earlier when counsel was here. It is the scope of the anticipated promotion. Can you please use my word against me? If I may. It's really a very poor strategy. I ask all sorts of questions. When Your Honor was addressing the question, well, if you had Joe Loves Mary in skywriting, couldn't that qualify as advertising material? And the answer is no, because it's not just the scope of the group. The entire definition has to be considered. And the entire definition is that you have to have widespread publication. I'm sorry. So if you so love your wife that you buy a 30-second spot on the Super Bowl and you hire an advertising agency at great expense to do advertising about what a great person she is and run into the middle of the Super Bowl to be seen by 6 million, 16 million, I don't know. I don't watch the Super Bowl. But I understand that's the premier place to advertise. And you run this thing to say what a great person she is and how you hope she would marry you once again, you know, the kind of stuff you have to do sometimes. You think that would not be viewed as advertising? The answer is it depends. If I put in the sky Joe Loves Mary with no attribution for who it is or advertising whose services they are, I am not putting any old Joe or any old Mary. But the point is if I'm Joe and I'm having written in the sky something about Joe Loves Mary, you have to look at the definition. It is to promote my goods, products, or services. That is the definition required both in the policy and in Hamid. Judge Beezer brought that up. Let me just sort of kind of pass this. You know, isn't it possible to target a small group of people without contacting them directly, using the means of advertising? Let's say, for example, you think, gee, there are only six or seven companies out there that, you know, I'm a consultant, you know, whatever, and there are really only six or seven companies in this industry. And of that, there are a handful of individuals who have the power to give me the business. And there are a couple of ways I could approach it. One way would be to call them up by phone and try to take them to lunch. Another way is to advertise in the channels that they watch in a way that will be seen by many people who are irrelevant, totally irrelevant. But those five or six people that I really care about will also see it. Now, are you saying that that would not be advertising? Well, you've given two discrete examples. One, am I broadcasting to the public at large with the intent that everybody is going to see it, but most prominently the people I want to view this are going to be large customers or potential customers. Then the fact is, of course it's advertising because I am directing it to the public at large by a medium. That is a solicitation by your definition. You are targeting a small, distinct group of people. You're not trying to get at anybody else. You know that most people watching that football game have not the power or the ability to help you or will not in any way influence the decision. There are really only a very small number of people, but you have to know that they're devout football fans and they will watch that game. In order to get their attention, you spend lavishly on advertising, essentially wasting the eyeballs of all those millions of others who will see the ad just to get to those five or six individuals. And perhaps you've given a better illustration than I can. You've used the word advertising. You've provided the medium, which is I'm putting it on the Super Bowl. I'm putting it on TV in a national campaign. That's advertising. Why is that a solicitation? It's not a solicitation. It's not because it's broadcast to the public at large and bringing it back into something that is germane to the duty to defend. In this case, there's nothing in the complaint that remotely speaks of or suggests that Tom Hayward was engaging in any advertising activity. There's no suggestion that he was advertising his goods, products, or services. What we have is a gentleman who took with him customer lists and other things just as in a maid and used them for the purpose that he was trying to develop his relationships with existing clients. We don't look at that. What we look at is what he was charged with doing and what he had to defend against, and we look at the face of the complaint to determine what it is that was his potential exposure. And, of course, the starting point is the face of the complaint. You also may, under California law under the Montrose decision, rely upon extrinsic evidence to determine whether or not there are facts outside of the complaint that could potentially put it within coverage. And if we look at the complaint itself, we don't see any of the three elements that we need in order to trigger a duty to defend. We don't see a misappropriation of advertising ideas or style of doing business that is promoting his goods, products, or service. We don't see any advertising. And, equally importantly, we don't see a nexus between the two. We have no description of any use of advertising and a link to the damages that have been potentially sustained or allegedly sustained. You were going to cite a Rambi. What do you want to make of that? I'm sorry? No, Rambi is the Carroll case. Correct. And you were going to tell us about Rambi. Well, you'd ask where does Hamed say that they are mutually exclusive, and I would point to the very first sentence in the opinion by Justice Bank in which it says, in Hamed, the Court considered the scope of the term advertising, as it is used, in a standard commercial general liability insurance policy. The Court found that advertising and solicitation are mutually exclusive terms. That's the California Court of Appeal. The very first sentence summarizing its view of California law on the heels of the Hamed decision. I would also suggest that the attempt to navigate around Hamed seeks to take one word, potential, but ignore the phrase itself. The phrase itself is soliciting customers and potential customers. The act is the solicitation of individuals as opposed to something to the public at large. There is nothing in the complaint, and I've certainly scoured it, I know that opposing counsel has, to see is there anything more than the limited one-on-one or extraordinarily small group solicitation that Hamed tells us, that we do tells us, that Rambi tells us, doesn't meet the test under the California state of the law and, indeed, the majority view for advertising. And you are absolutely correct. In the abstract, if I put on a media campaign in the Super Bowl, that is advertising. If I bring someone to the Super Bowl, I use my tickets, and I sit up there in the box, and I talk to him, again, with the design to get his business as a potential customer, that's not advertising because there is nothing about widespread dissemination of information and promotional material to the public at large, and that, indeed, is what is required under Hamed. Would your position be different if the underlying complaint said marketing instead of soliciting? No, and it's because it still has to speak to advertising as opposed to marketing. If you look at the insurance policy itself, the insurance policy says misappropriation of advertising ideas, and a marketing campaign, indeed, if there is the taking of marketing materials, again, under the three-pronged test that Bank of the West and Hamed gives, you have to have misappropriation of advertising ideas. A marketing campaign need not be an advertising idea. Indeed, perhaps that would trigger a duty to do further investigation to determine what it means, but on the bare face of the complaint, if that phrase were substituted, it wouldn't change the outcome. Secondly, you would have to have a link, a nexus between the damages claimed by the plaintiff and the defendant. So if you had, they took our marketing folder, for example, does it get over the threshold of advertising ideas? Does it establish a nexus between damages and the taking of the marketing materials? And if you were to take the bare clause that you inserted, marketing materials, it probably wouldn't. Moreover, Mr. Hayward is the only appellant in this case, and there was no suggestion that he was advertising his goods, products, or services, or that he was doing any advertising. Indeed, it was his employer who elected not to appeal who was doing those things. He simply did what a lot of employees do these days. He opened up the briefcase. He stuffed in what he could, closed the briefcase, and went to the new company that had been attempting to hire him. So none of the three prongs have been satisfied on the face of the complaint, and indeed inserting the term marketing materials wouldn't change that outcome. Okay. Thank you. Thank you. Thank you. I discovered that language in Romney last night when I was preparing for today, and, of course, I was concerned about it, so I tried in my own mind to figure out what the court was met, citing to Hamid, stating that the Hamid court says there's a difference between solicitation on the one hand and advertising on the other, and the best I have been able to do. Well, it says more than that. It says a mutually exclusive category. That's right, in Romney. And, of course, I, anticipating this argument, I said, well, maybe I missed something here and I should not proceed. But I don't believe that that's what Hamid says. The closest that I've been able to find it in Hamid is right. It is what Romney says, though. No question about it. And I believe that the court in Romney. It would certainly be very useful all around if we didn't disagree with Romney, wouldn't it? Did or did not? Did not. Well, it's not good for us. I will grant you that. But my understanding is this is what the California Supreme Court would do, you know, that this court is going to make that determination. But let me anticipate what the California Supreme Court would do with this. But let me suggest, if I may, the best that I've been able to do is to look at Romney and, again, go through and it gets back to the word solicitation. And each time that the word solicitation is used as something that is not within the scope of advertising injury, it has a qualifier to it where it's in the context of what we're talking about, a small group, one-on-one, the types of things that we know are probably not going to trigger this type of coverage. Our suggestion, and I believe that in Romney they're using solicitation now in this context to indicate one-on-one solicitation or a small group or something like that. I don't believe that a fair reading of Hamid would indicate that the word solicitation now has evolved into a word of art or something in this context that excludes advertising injury coverage. Indeed, I think that the word solicitation in the context of what we're discussing, going back to when the insurer looked at this complaint, and that's all the insurer did, and saw marketing plans and strategy and whatnot, and then saw soliciting potential customers, in reason did the insurer then say, well, that's got to be one-on-one or something. I don't think so. I think solicitation, as I said earlier, is broader than advertising. I believe that that is a fair reading of the complaint. As I indicated earlier, we believe that this would trigger liability. Thank you very much. Thank you. We're out of time. I think we understand your position. Thank you. Okay. Just allow your stance a minute.
judges: Beezer, Kozinski, Carney